UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA                     :

   -*v*.-                                                         :         19 Cr. 699 (JGK)

JAMES T. BOOTH,                                        :

               Defendant.                         :

---------------------------------------------------------------x

## THE GOVERNMENT'S SENTENCING MEMORANDUM

                                           AUDREY STRAUSS
                                           Acting United States Attorney
                                           Southern District of New York

Robert L. Boone
Assistant United States Attorney

- Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

UNITED STATES OF AMERICA           :

   -v.-                                           :     19 Cr. 699 (JGK)

JAMES T. BOOTH,                            :

                 Defendant.      :

---------------------------------------------------------------x

## PRELIMINARY STATEMENT

The Government writes in advance of the sentencing of defendant James T. Booth, which is currently scheduled for September 18, 2020, at 2:30 p.m., and in response to the defendant's sentencing submission dated February 13, 2020. On October 22, 2019, the defendant pled guilty to securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2. The defendant pled guilty pursuant to a plea agreement, which contained a stipulated Guidelines range of 78 to 97 months' imprisonment. For the reasons discussed below, the Government respectfully submits that a sentence within that stipulated Guidelines range is sufficient but not greater than necessary to promote the legitimate ends of sentencing.[1]

## BACKGROUND

### A. The Defendant's Offense Conduct

As detailed in the Presentence Investigation Report and the Indictment, Booth abused his position as an investment advisor and owner and operator of his own financial services firm,

---

[1] As discussed below, the Guidelines range calculated by the United States Probation Office differs from the parties' stipulated Guidelines range. (*See* PSR ¶¶ 80-82). After consultation with Probation, the Government agrees that Probation has correctly calculated the applicable Guidelines range to be 121 to 151 months' imprisonment. Nevertheless, the Government seeks a sentence within the parties' stipulated range of 78 to 97 months' imprisonment, while Probation recommends a sentence of 60 months' imprisonment. (*See* PSR Pg. 20).

1

Booth Financial Associates ("Booth Financial"), by misappropriating nearly $5 million of his clients' funds to pay his personal and business expenses.

Founded in 1989, Booth Financial provided advisory services to individuals and small businesses and sold insurance products. (Indictment ¶ 1.) Booth Financial maintained its primary office in Norwalk, Connecticut, and another office in Saranac Lake, New York. (*Id.*)

From 2013 through 2019, Booth solicited money from clients of Booth Financial and falsely promised to invest their money in securities offered outside of their ordinary advisory and brokerage accounts. (*Id.* ¶ 3.) Specifically, Booth directed certain of his clients to write checks or wire money to an entity named "Insurance Trends, Inc." (*Id.*) Instead of investing his clients' funds, Booth, who controlled Insurance Trends, Inc.'s bank account, subsequently misappropriated his clients' funds to pay his personal and business expenses. (*Id.*)

In total, Booth raised approximately $4.9 million from approximately 40 investors. (*Id.* ¶ 4.) Booth lured many of his victims with false promises of safe investments with high returns. (*Id.*) For example:

    a.    Booth convinced a recently-widowed elderly investor ("Investor-1") to move money she had received from her late husband's pension into Insurance Trends, Inc. Booth falsely promised Investor-1 that she would have $1 million by the time she was 100 years old. As a result of Booth's false assurances, Investor-1 invested more than $600,000 with Booth. (*Id.* ¶ 4(a).)

    b.    Booth similarly convinced another investor ("Investor-2") to move his money into an investment product that, according to Booth, would never lose its principal and would grow with the market. Based on this false representation, Investor-2 moved money he had set aside for his child's college expenses, at least approximately $60,000, to Booth. Booth subsequently

failed to provide Investor-2 with documentation of his investment or to allow Investor-2 to redeem his investment. (*Id.* ¶ 4(b).)

   c.  Booth convinced another elderly investor ("Investor-3") to withdraw money from an annuity established for the care of his disabled sibling, approximately $18,000, and invest that money with Booth. Investor-3 gave the money to Booth with the understanding that Booth would invest that money for the benefit of Investor-3's sibling's continued care. (*Id.* ¶ 4(c).)

 To prevent investors from seeking a return of their money, and to induce additional investments, Booth provided investors with fabricated account statements that falsely indicated that he had purchased certain securities on their behalf and that those investments had generated a profit. (*Id.* ¶ 5.) Booth further concealed the truth from investors by using money obtained from new investors to make redemption payments to previous investors, in Ponzi-like fashion. (*Id.*)

### B. The Charges and The Defendant's Guilty Plea

Indictment 19 Cr. 699 (JGK) charged Booth with participating in the securities fraud scheme described above. On October 22, 2019, the defendant pled guilty to Count One of the Indictment, which charged securities fraud in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2, and Booth also agreed to forfeiture of $4,969,689. (PSR ¶ 6.)

### C. The Applicable Guidelines

As set forth in the parties' plea agreement, the base offense level is seven; an eighteen-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(1)(J) because the gain derived from the offense is more than $3,500,000 but less than $9,500,000; a two-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved sophisticated means; and a four-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(20)(A) because the offense

involved a violation of securities law and, at the time of the offense, the defendant was an investment adviser. (*See* PSR ¶ 6, 30, 31, 33, 34.) According to Probation, an additional four-level increase is warranted pursuant to U.S.S.G. § 2B1.1(b)(2)(B) because the offense resulted in financial hardship to more than five victims. (PSR ¶ 32.) Although the parties did not stipulate to this enhancement in the defendant's plea agreement, the Government agrees with Probation's assessment. Accordingly, given that a three-level decrease is warranted pursuant to U.S.S.G. § 3E1.1(a) and (b) due to the defendant's acceptance of responsibility, Booth's total offense level is thirty-two. (PSR ¶ 42.) The defendant has zero criminal history points and is in Criminal History Category I. (*Id.* ¶ 45.). Accordingly, the applicable Guidelines range is 121 to 151 months' imprisonment. (*Id*. ¶ 80).

The Probation Department has recommended that Booth be sentenced to 60 months' imprisonment followed by a three-year term of supervised release. (*Id*. at Pg. 20).

## DISCUSSION

As the Court is aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id*. at 49. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the history and characteristics of the defendant, the need to adequately deter criminal conduct and promote respect for the law, and the need to protect the public from further crimes of the defendant. *Id*. at 50 & n.6.

4

Here, a sentence within the stipulated Guidelines range is appropriate and would meet the objectives set forth in 18 U.S.C. § 3553(a), given (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and (B) to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553(a)(1), (2)(A)-(B).

A. The Nature and Seriousness of the Offense

Booth's conduct was truly egregious. He orchestrated an approximately $4.9 million fraud that spanned over five years and claimed several hard working people as victims. Booth's conduct was also shockingly brazen. Booth raised millions of dollars by claiming he would invest his victims' money outside of their ordinary advisory and brokerage accounts through an entity he controlled named "Insurance Trends, Inc." (Indictment ¶ 3.) Specifically, Booth directed certain of his clients to write checks or wire money to Insurance Trends, Inc. (*Id*.) Instead of investing his clients' funds, Booth stole their money and used it to pay his personal and business expenses. (*Id*.) To raise money for his scheme, Booth told a myriad of boldface lies to particularly vulnerable victims. As noted above, Booth convinced a recently-widowed elderly investor to move money she had received from her late husband's pension into Insurance Trends, Inc. on the false promise that she would have $1 million by the time she was 100 years old. (*Id*. ¶ 4(a)). Booth convinced another investor to move money he had set aside for his child's college expenses to an investment product that Booth falsely claimed would never lose its principal and would grow with the market. (*Id*. ¶ 4(b).) Finally, Booth convinced another elderly investor to withdraw money from an annuity established for the care of his disabled sibling and invest that money with Booth on the false understanding that Booth would invest that

5

money for the benefit of the investor's sibling's continued care. (*Id*. ¶ 4(c).) As these lies illustrate, Booth's fraud was not a momentary lapse in judgment. Rather, it was an outright theft that spanned a multi-year period.

    B.  <u>The Need for Deterrence and Promote Respect for the Law</u>

        The fact that Booth ran a multi-year scheme enabling him to steal approximately $4.9 million from investors makes plain the need to impose a Guidelines sentence to afford specific deterrence and promote respect for the law.

        But general deterrence is also particularly important. Investment schemes such as this one rely on unsophisticated investors placing trust in a finance professional. Because victims of such schemes oftentimes do not understand, or do not want to believe, that they have been defrauded by someone they trust, the schemes can be both highly lucrative and difficult to detect. As such, significant punishment is necessary to deter others from similar conduct. To deter criminal conduct by individuals like Booth, effectuate the purpose of the securities fraud laws, and send an appropriate message that this type of fraud will not be tolerated, a sentence within the stipulated Guidelines range is warranted.

## **CONCLUSION**

For the aforementioned reasons, the Government respectfully submits that a sentence within the stipulated Guidelines range is appropriate in this case and sufficient but not greater than necessary to promote the legitimate ends of sentencing.

Dated: New York, New York
September 11, 2020

                                         Respectfully submitted,

                                         AUDREY STRAUSS
                                         Acting United States Attorney

                              By:    <u>s/ Robert L. Boone</u>
                                         Robert L. Boone
                                         Assistant United States Attorney
                                         (212) 637-2208